# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

JOYCE A. SMITH,              :
                              :

    Plaintiff,            :
                              :       Case No. 2:07-CV-362

v.                         :
                              :       **JUDGE ALGENON L. MARBLEY**

HEARTLAND EMPLOYMENT    :       **Magistrate Judge Kemp**
SERVICES, LLC             :
                              :

    Defendant.        :

## OPINION AND ORDER

### I.  INTRODUCTION

This matter comes before the Court on Defendant Heartland Employment Services, LLC's ("Heartland") Motion to Strike and Motion for Summary Judgment, and Plaintiff Joyce A. Smith's ("Smith") Motion for Summary Judgment. For the reasons set forth below, this Court **DENIES in PART** and **GRANTS in PART** Heartland's Motion to Strike, **DENIES** Heartland's Motion for Summary Judgment, and **DENIES** Smith's Motion for Summary Judgment.

### II.  BACKGROUND

### A. FACTUAL BACKGROUND

### 1. The Parties

Heartland is a skilled nursing and rehabilitation center providing post-hospital care, including skilled nursing care and short-term rehabilitation care. In December 1996, Smith applied for and received a position as a staff nurse at Heartland. Smith remained employed in this position until her termination in January 2007.

During her employment with Heartland, Smith worked a rotating schedule: one week she would work Friday, Saturday and Sunday, and the next week she would work Thursday, Saturday, Sunday, and Monday. Smith's job duties consisted primarily of providing nursing care to patients who were staying at the Marysville nursing home facility. Heartland typically had a registered nurse assigned to supervise each shift, although the Director of Nursing was ultimately responsible for the nursing staff. Throughout Smith's entire employment with Heartland, Clara Flack ("Flack") was the registered nurse assigned to the third shift at Heartland, and the Director of Nursing was Kathy Ricci ("Ricci").

## 2. Heartland's Policies and Procedures

As part of her orientation with Heartland, Smith received an Employee Handbook which contained various policies and procedures, including Heartland's "Leaves of Absence Policy," "Employee Complaint Procedure," and "Attendance Policy," among others. Smith admits she understood that she would be subject to discipline and/or termination if she violated the policies contained in the Handbook.

Heartland has several policies relating to employee conduct and leaves of absence. Specifically, Heartland's Attendance Policy provides that an employee will accrue attendance occurrences for each absence consisting of a "period of one or more consecutive scheduled days of work." In addition, the Attendance Policy specifically provides that "time-off for a qualifying reason under the Family and Medical Leave Act ("FMLA") is an excused absence" – and it is not counted as an occurrence under the Attendance Policy.

Pursuant to Heartland's FMLA Policy, a qualified employee is eligible for up to twelve workweeks of unpaid leave within any twelve month period. An employee may use FMLA leave

for various reasons, including if an employee's immediate "family member, including a parent, has a serious health condition, and the employee is needed to care for the family member during periods of inpatient care and during periods of home care." An employee need not use the words "family leave" or "family medical leave" to invoke FMLA leave; instead, the employee simply needs to communicate sufficient information to implicate the FMLA.

Heartland generally uses a step-by-step progressive disciplinary procedure for unexcused absences. After the fifth "occurrence" (or unexcused absence), the employee receives counseling; the sixth occurrence results in a written warning; the seventh occurrence results in a second written warning; the eight occurrence results in a final written warning; and the ninth occurrence results in termination.[1]

In 2006 and 2007, if an employee was going to be absent from their scheduled shift at Heartland, the employee was required to call in at least two hours prior to their scheduled shift. The employee would generally call the facility and speak with the nurse in charge of the shift during which the employee called. The individual who received the call completed an Absence Report listing the reason for the employee's absence based on the information given by the employee. The Absence Report was then given to the employee's supervisor, which for nurses would be the Director of Nursing (Ricci), who tracks each individual employee's attendance and is supposed to mark the absence appropriately. In addition, the Human Resources ("HR")

---

[1]This policy, which was a revision to the earlier policy, became effective August 1, 2006. The prior policy allowed for ten occurrences before termination. Because of this change, current employees had one of their occurrences "excused." Thus, for the period of time in question in this case, employees like Smith were given ten occurrences before they were terminated.

Manager, Linda Streitenberger ("Streitenberger"), assisted in tracking the absences in the nursing department along with Ricci.

If the employee gave any indication that a family member was having health problems and needed leave due to that, then the employee would be sent to Streitenberger who could help the employee determine FMLA leave eligibility, and how to be put on such leave. According to Smith, Streitenberger approached Smith about the frequency of her absences. Smith alleges she told Streitenberger that her father's illness was the reason for some of the absences. Smith alleges Streitenberger then told her she could only apply for FMLA leave if she was needed to care for her father for three or more consecutive days. Smith also alleges that Streitenberger told her she would need to fill out FMLA paperwork if a three or more day absence occurred, but Streitenberger did not give her any FMLA leave papers to fill out at the time, nor at any time subsequent to that. Though Streitenberger admits to speaking with Smith on several occasions regarding her absences, Streitenberger denies that Smith ever indicated that some of her absences were due to her father's illness, denies that Smith ever required a leave of absence for any reason, and denies that she told Smith that FMLA leave was only available if an employee was going to be absent for three or more days.

### 3. Smith's Absences

In 2006, Smith had the following absences, which were counted by Heartland as occurrences (unexcused absences):

- January 22 and 23 (first occurrence),[2]
- February 9 - 11 (second occurrence),

---

[2]When an employee is absent for consecutive scheduled days of work, that is considered a single occurrence.

- February 13 (third occurrence),
- March 22 (fourth occurrence),
- March 27 (fifth occurrence),
- April 17 (sixth occurrence),
- April 28 – 30 (seventh occurrence),
- June 8 (eighth occurrence),
- September 15 (ninth occurrence),
- October 6 (tenth occurrence),
- November 20 (eleventh occurrence),
- December 23 (twelfth occurrence) and;
- December 29-30 (thirteenth occurrence).

In January 2006, Smith's father began to suffer the effects of congestive heart failure, which ended in his death on May 3, 2006. Smith asserts she described the situation with her father's health to Heartland in January. Smith's father was actually a resident of Heartland's Marysville facility, where Smith worked, from late-January to early-February 2006. Smith alleges, therefore, Heartland was aware of the seriousness of her father's condition. Heartland also knew of Smith's father's death on May 3rd, as it gave her bereavement leave on May 5-7.

Smith alleges that the occurrences on January 22nd and 23rd, February 9-11, February 13th, March 22nd, and April 28-30 were days taken off to help care for and comfort her terminally ill father. Smith asserts that for the January, February, and March absences, Smith called in and notified Heartland she needed time off to assist with her father's care. For the April absence, Smith asserts she informed Heartland that the hospital had called the family in for her father. Smith asserts the absence of February 9-11, and the absence of February 13th were specifically taken to oversee transfer and setting up of Smith's father from Heartland of Marysville to home care.

Heartland alleges that Smith offered no indication that the absences at issue were for an FMLA qualifying reason. Heartland asserts:

• For January 22nd, Smith offered no explanation for her absence;

• For January 23rd, Smith called in to work and reported that she would not be in because her father was in the hospital, but Smith did not communicate any additional information to Heartland, nor did she provide any medical documentation regarding her father and his hospital stay.

• For February 9-11, Smith called off. These were marked as sick days.

• For February 13th, Smith called off. This was marked as a sick day.

• For March 22nd, Smith called in and stated that she would be absent due to a family illness, but Smith provided Heartland no additional information regarding this absence.

• For April 29th, Smith reported that she  would not be able to work on that date because the "hospital called [the] family in," but Smith provided Heartland no additional information regarding this absence.

For the January 23rd absence, the March 22nd absence, and the April 29th absence, the Absence Reports listed the absences were due to "Family Illness." The Absence Reports stated the following reason for the absences:

• January 23rd - "father is [in] hospital"

• March 22nd - no information listed

• April 29th - 'Hospital called family in"

Ricci states that she did not view "Father is [in] hospital" and "Hospital called family in" as enough information to grant FMLA leave, and that if a person had a problem or were going to need leave, usually "they would call me or they would come to my office and they would say something is going on." (Ricci depo. at p. 17). Ricci asserts that as she received no communication from Smith that there was a problem, she did not further investigate and she just logged the absence the way it was written and did not grant FMLA leave.

## 4. Smith's Discipline and Termination

After receiving her fifth occurrence, Smith received counseling regarding her absence. She then received a verbal warning after her eighth occurrence. On September 23rd, after her ninth occurrence, Smith received a written warning regarding her absences. When Smith was given the written warning, it was explained to her that she was continuing on in the disciplinary process, and that her next occurrence would result in a final written warning. On October 14th, after her tenth occurrence, Smith received a final written warning. At that time, Smith was informed that her next attendance occurrence would result in her termination. Heartland alleges that during the entire disciplinary process, Smith never indicated that any of her absences were excused, nor did she provide any additional information which would put Heartland on notice that the absences were FMLA protected.

On December 28th, after Plaintiff's twelfth occurrence, Ricci called Smith and requested that she come in to discuss her absences. On December 30th, Smith again called in and reported that she would be unable to work on that date due to her own illness. Shortly after Smith called in to report this absence, Ricci again contacted Smith via telephone. At this time, Smith was informed that she was being suspended for three days because of her absences, pending an investigation. Smith did not report to work on December 30th, January 1st, or January 2nd because of this suspension. Smith also did not report to work on January 3rd. Smith was contacted on January 3rd and asked to come in on January 4th for a meeting.

On January 4, 2007, Smith met with both Ricci and Heartland Administrator Julie Michael ("Michael"). Michael had reviewed Smith's personnel file and her call-off history and took note of those absences. During that meeting, Smith's employment was terminated,

according to Heartland, based on her thirteen attendance occurrences. During that meeting, Smith offered no explanation regarding her absences, or the reasons for these absences. Ricci and Smith also did not ask any questions regarding the absences.

## B. PROCEDURAL BACKGROUND

Smith brought suit against Heartland on April 24, 2007, alleging a claim for interference with her rights under the FMLA, 29 U.S.C. § 2601, et seq. ("FMLA"). Smith's claim arises out of her termination from Heartland due to repeated absences. Both parties have filed cross motions for summary judgment on this sole claim. Smith asserts her termination was in violation of the FMLA because several of her absences were FMLA-protected. Heartland asserts that none of Smith's absences were FMLA-qualifying. Heartland has also filed a Motion to Strike Smith's affidavit.

## III. STANDARD OF REVIEW

Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). But "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant therefore has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). But the non-moving party "may not rest upon its mere allegations." Fed.R.Civ.P. 56(e); *see Celotex*, 477 U.S. at 324;

*Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

The standard of review for cross-motions of summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation. *Taft Broad. Co. v. U.S.*, 929 F.2d 240, 248 (6th Cir. 1991). And

> [t]he fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits....

*Id.* (citations omitted).

## IV. LAW & ANALYSIS

### A. MOTION TO STRIKE

In support of Smith's Motion for Summary Judgment, Smith submitted an affidavit. Heartland moves the Court to strike Smith's affidavit or, in the alternative, to strike certain portions of Smith's affidavit, on the grounds that Smith's affidavit contradicts her previous sworn deposition testimony and is otherwise improper under Rule 56(e) of the Federal Rules of Civil Procedure.

Rule 56(e) of the Federal Rules of Civil Procedure states:

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

Fed. R. Civ. Proc. 56(e)(1). Rule 56(e) allows affidavits to be considered on summary judgment, but only to the extent that the facts contained therein are admissible into evidence. "A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986), *quoted by Briggs v. Potter*, 463 F.3d 507, 512-13 (6th Cir. 2006).

In *Aeral, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899 (6th Cir. 2006), the Sixth Circuit developed a two part inquiry for determining whether a party's post-deposition affidavit should be considered:

> [A] district court deciding the admissibility of a post-deposition affidavit at the summary judgment stage must first determine whether the affidavit directly contradicts the nonmoving party's prior sworn testimony. . . . A directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction. . . . If, on the other hand, there is no direct contradiction, then the district court should not strike or disregard that affidavit unless the court determines that the affidavit "constitutes an attempt to create a sham fact issue."

*Id.* at 908 (internal citations omitted). Heartland contends that Smith's affidavit should be stricken both because it directly contradicts her prior deposition testimony and, in the alternative, because the affidavit attempts to create a sham fact issue.

Smith was deposed on February 21, 2008. Smith alleges that her affidavit expands on what was asked in her deposition testimony and addresses facts on subjects which she simply was not asked any questions at all. One's affidavit cannot contradict her deposition testimony if it merely reveals information that was not fully explored during that testimony. *See id.* at 909. Heartland asserts that the following portions of Smith's affidavit either directly contradict previous testimony, or are an attempt to create a sham fact issue:

• Smith claims, in her executed affidavit, that "I called off work February 9-13 (I was scheduled to work on February 9, 11 and 13) to assist in transitioning my father from being a resident at Heartland of Marysville to being cared for at home." (Smith aff. ¶ 4).

• Smith claims, in her executed affidavit, that "[E]very Charge Nurse was aware of the seriousness of his condition. My absence of February 9 – 13, 2006, was, in fact, used to help move my father from Heartland of Marysville to home care." (Smith aff. ¶ 8).

• Smith claims, in her executed affidavit, that "I called off work on April 28-29, 2006, to help with the admittance of my father to Grady Memorial Hospital in Delaware, Ohio. He never left Grady Memorial after that, and died there on May 3, 2006." (Smith aff. ¶ 6).

• Smith claims, in her executed affidavit, that "For each of these absences set forth in ¶¶ 3-6 above, I informed my employer, Heartland of Marysville, when I called in to inform them I would be absent that I needed time off to assist with my father's care. In January of 2006, I had described the situation with my father's health to Heartland, i.e. that he was terminally ill. Each time I called thereafter regarding any absences related to my father, I stated that the absence was due to me being needed to assist him" (Smith aff. ¶ 7).

• Smith claims, in her executed affidavit, that "During my father's illness, I was approached by Heartland's Human Resources Manager Linda Streitenberger about the frequency of my absences. I told her of my father's illness as being the reason for some recent absences she was asking about. Ms. Streitenberger told me that I could only apply for Family Medical Leave if I was needed to care for my father for three (3) or more consecutive days. Ms. Streitenberger told me I would need to fill out FMLA paperwork if a three or more day absence occurred, but did not give me any FMLA leave papers to fill out at that time, nor at any time subsequent to that." (Smith aff. ¶ 9).

## 1. February 9-13 Absence

Smith claims in her affidavit, "I called off work February 9-13 (I was scheduled to work on February 9, 11 and 13) to assist in transitioning my father from being a resident at Heartland of Marysville to being cared for at home." (Smith aff. ¶ 4). In Smith's deposition, the following question is asked and answer is given:

Q. And so at least as to the three-day period of February 11, 12, and 13, do I understand your testimony correctly that you were absent from work for one reason or another on February 11th, that you worked then February 12th, that Sunday, and then you were absent again on Monday, February 13th?
A. Yes

(Smith depo. at p. 71).

This Court finds the statement "I called off work February 9-13 (I was scheduled to work on February 9, 11 and 13)" to be directly contradictory to Smith's assertion in her deposition that she was also scheduled to work February 12th and did not call off work that day. This is significant in that February 9-11 is the second occurrence of absence. Because Smith was not scheduled to work on February 10th, her absences on the 9th and 11th are treated as one occurrence. February 13th, however, is the third occurrence of absence. Because Smith worked on February 12th, her absence on February 13th was considered a separate occurrence since it was not an absence of a "consecutive scheduled day of work." Therefore, the statement "I called off work February 9-13 (I was scheduled to work on February 9, 11 and 13)" will be stricken.

The asserted reason she called off work during that time period, "to assist in transitioning my father from being a resident at Heartland of Marysville to being cared for at home" does not directly contradict any statements in her deposition. She never asserts in her deposition that she called off work during that time for a different reason. In determining whether this affidavit statement "constitutes an attempt to create a sham fact issue," the following facts are a useful starting point,

> whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion [that] the affidavit attempts to explain.

*Aerel*, 448 F.3d at 908-09.

-12-

Smith was not cross-examined on why she was absent February 9th, 11th, and 13th. She was asked, however, whether the absences marked for those dates were inaccurate, to which she replied:

> A. Yes, I think they're inaccurate.
> Q. How so?
> A. Well, if I am looking at it right, it looks like there's an S. The S is for sick. And those were days that like I was taking care of dad after he was discharged from Heartland.

(Smith depo. at p. 70). This deposition testimony is in line with the her affidavit statement that she "called off work . . . to assist in transitioning my father from being a resident at Heartland of Marysville to being cared for at home." Therefore, this affidavit statement does not constitute an attempt to create a sham fact issue.

## 2. Charge Nurses' Awareness of Smith's Father's Condition

Smith claims in her affidavit, that "every Charge Nurse was aware of the seriousness of his condition. My absence of February 9-13, 2006, was, in fact, used to help move my father from Heartland of Marysville to home care." (Smith aff. ¶ 8). Again, to the extent that her statement that her absence February 9-13 indicates that she was absent February 12th, such statement directly contradicts her deposition. However, the statement that any absence during that period was "used to help move my father from Heartland of Marysville to home care" is in direct contradiction of her deposition testimony or an attempt to create a sham fact issue, as explained above.

Heartland claims that the statement going to the awareness of all the other charge nurses is conclusory. Statements contained in affidavits which are "nothing more than rumors, conclusory allegations and subjective beliefs" are not admissible evidence at the summary

judgment stage. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584-85 (6th Cir. 1992), *cited by Wilson v. Ohio*, 178 F.App'x 457, 464 (6th Cir. 2006). The statement "every Charge Nurse was aware of the seriousness of his condition," is a conclusory allegation and will be stricken.

### 3. April 28-29 Absence

Smith claims in her affidavit, "I called off work on April 28-29, 2006, to help with the admittance of my father to Grady Memorial Hospital in Delaware, Ohio. He never left Grady Memorial after that, and died there on May 3, 2006." (Smith aff. ¶ 6). In her deposition, Smith stated regarding her absence during that time, "The 28th and 29th of April were concerning my father, my dad." (Smith depo. at 73). Smith never asserted she called off work during that time for a different reason. The statement in her affidavit, therefore, is not directly contradictory to any statements in her deposition. Furthermore, Heartland's attorney failed to ask Smith the exact reason she needed to help her father; she was, therefore, never cross-examined on this point and this does not constitute an attempt to create a sham fact issue.

### 4. Informing Heartland

Smith claims in her affidavit that for her absences for January 22-23, 2006; February 9-11, 2006; February 13, 2006; March 22, 2006; and April 28-29, 2006, she informed Heartland that she would be absent and "needed time off to assist with my father's care." (Smith aff. ¶ 7). Smith also claims in her affidavit that in January 2006, she had "described the situation with my father's health to Heartland, i.e. that he was terminally ill." (*Id.*) Finally, she claims in her affidavit that each time she called regarding absences related to her father she "stated that the absence was due to me being needed to assist him." (*Id.*)

Smith was not questioned about whether she informed Heartland in January 2006 about the condition with her father. Smith was also not questioned about what she informed Heartland for her January 22-23 absence, February 9-11 absence, or February 12th absence. Those statements in her affidavit are not, therefore, in direct contradiction to her deposition, and as she was not questioned about those time periods, those statements are not an attempt to create a sham fact issue. For the March 22nd absence, Smith gave the following testimony:

> Q. Did you, in fact, call in to Heartland to say that you would be absent due to a family illness?
> A. Yes.

(Smith depo. at p. 81). The Court does not find Smith's deposition testimony regarding her March 22nd absence to be directly contradictory to the statements in the affidavit. As she was not questioned about the March 22nd absence, the statement is also not an attempt to create a sham fact issue.

For the April 28-29 absence, Smith gave the following testimony:

> Q. Did you, in fact, call in to Heartland to say that there was a family illness and that the hospital had called the family in?
> A. Yes.
> Q. Was that in connection with your father?
> A. Yes.
> Q. Do you recall telling Heartland anything else on this occasion for this absence?
> A. No.

(Smith depo at p. 84). Smith testified that only thing she informed Heartland was that there was a family illness in connection with her father and the hospital had called the family in. She was *specifically questioned* at her deposition whether she told Heartland *anything else* on that occasion for that absence, and she answered she had not. Therefore, the Court finds the assertion in Smith's affidavit that she informed Heartland that she needed to be absent April 28-29 to

assist with her father' care (and the assertion that she informed Heartland "that the absence was due to me being needed to assist him") is in direct contradiction to the statements to her deposition testimony. As Smith offers no explanation for this contradiction, these statements will be stricken.

### 5. Conversation with Streitenberger

Smith claims in her affidavit that she had conversations with Heartland's HR Manager, Streitenberger, about her absences, the condition of her father, and the FMLA. (*See* Smith aff. ¶ 9). These statements do not directly contradict anything in Smith's affidavit, nor are they an attempt to create a sham issue of fact, as Smith was never questioned about what conversations she had with Streitenberger regarding these issues.

### 6. Statements Stricken

In conclusion, the following statements are stricken:

(a) The Statement in paragraph four of Smith's affidavit: "I called off work February 9-13 (I was scheduled to work on February 9, 11 and 13)" to the extent it indicates that Smith called off work February 12th and to the extent it alleges Smith was not scheduled to work February 12th.

(b) The statement in paragraph eight of Smith's affidavit: "My absence of February 9-13, 2006" to the extent it indicates that Smith was absent February 12th."

(c) The statement in paragraph eight of Smith's affidavit: "This meant that every Charge Nurse was aware of the seriousness of his condition."

(d) The statement in paragraph six of Smith's affidavit: "I informed my employer . . . when I called in to inform them I would be absent that I needed time off to assist with my father's care." And the statement: "Each time I called thereafter regarding any absences related to my father, I stated that the absence was due to me being needed to assist him." But these statements are only stricken to the extent such statements indicate that Smith informed Heartland that her April 28-29, 2006 absence was due to assisting with her father's care.

All remaining statements in Smith's affidavit are not stricken. Heartland's Motion to Strike is thereby **DENIED in PART** and **GRANTED in PART**.

## B. CROSS MOTIONS FOR SUMMARY JUDGMENT

The FMLA entitles qualifying employees to take up to twelve weeks of unpaid leave each year if, among other things, an employee has "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Pursuant to the FMLA, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). The Sixth Circuit recognizes "two distinct theories of recovery under the FMLA: (1) the 'entitlement or interference' theory arising under 29 U.S.C. § 2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising under 29 U.S.C. § 2615(a)(2)." *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004). Entitlement/interference claims are based on prescriptive rights, which establish entitlements to employees and set floors for employer conduct, while retaliation claims are based on proscriptive rights, which prohibit disparate employer conduct with regard to employees taking leave. *Taylor v. The Union Inst.*, 30 F. App'x 443, 452 (6th Cir. 2002).

Smith alleges that her termination was in violation of the FMLA because several of her absences were FMLA-protected. In Smith's Motion for Summary Judgment, she only argues her claim under the interference theory, as does Heartland. At oral argument, however, Smith asserted that pursuant to *Wysong v. Dow Chemical Co.*, 503 F.3d 441 (6th Cir. 2007), she was

also asserting a claim under the retaliation theory.[3] As neither party briefed the Court under the retaliation theory, this Court will only briefly analyze the claim under that theory, but primarily analyze the claim under the interference theory.

### 1. FMLA Interference

To establish that Heartland interfered with her rights under the FMLA, Smith must show the following: (1) Smith is an FMLA "eligible employee;" (2) Heartland is an FMLA employer; (3) Smith was entitled to leave under the FMLA; (4) Smith gave Heartland notice of her intention to take leave; and (5) Heartland denied the employee FMLA benefits to which she was entitled. *See Calvin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003). The parties only debate whether the fourth element, notice of intention to take leave, was established.[4]

---

[3]*Wysong* recognized that an FMLA claim can encompass both the interference and retaliation theory. 503 F.3d at 446. A claim that a defendant's actions violated the FMLA "does not box plaintiffs into one theory or the other at the complaint stage of an FMLA action." Id. The plaintiff therefore did not forfeit the opportunity to present her FMLA claim at summary judgment under both the interference theory and retaliation theory. *Id.*

[4]At oral argument on the Motions for Summary Judgment, Heartland also argued that the fifth element was not satisfied, because there was no entitlement to benefits. Heartland asserted that Heartland retained discretion to terminate Smith for "excessive absenteeism," so even removing the potential FMLA absences from the equation, Heartland could conclude Smith's eight unchallenged absences were excessive.

However, according to testimony of Michael, the Heartland administrator, "we have to follow protocol" and the ten-absence process, with its system of warnings, is to be followed. (Michael depo. at p. 44). Furthermore, evidence establishes that the potential FMLA-qualifying absences were considered as part of the absences that resulted in Smith's termination. (*Id.* at p. 30, Exhibit 13). Ricci, the Director of Nursing testified, "I believe that [Smith] went through the disciplinary process and that when she reached that particular number [ten absences], that then she was discharged." (Ricci depo. at p. 30).

The evidence belies that Heartland had discretion to terminate employees before reaching ten absences, and shows the ten absence process was to be followed, and was followed in this situation. Smith was terminated for having at least ten absences, which included potential FMLA absences. "[A] termination based only in part on an absence covered by the FMLA, even in combination with other absences, may still violate the FMLA." *Calvin*, 346 F.3d at 726 (6th Cir.

-18-

Under the FMLA, an employee must not only communicate the need for leave, but must also provide the employer with sufficient information so that the employer may ascertain that the requested employee leave is for an FMLA-qualifying reason. *See* 29 C.F.R. § 825.303(b); *Walton v. Ford Motor Co.,* 424 F.3d 481, 486 (6th Cir. 2005) ("[t]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition"). Once an employer receives sufficient information that an employee is requesting FMLA leave, the employer bears the burden to gather any additional information necessary to determine whether the leave falls within the FMLA. *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 422 (6th Cir. 2004).

It is undisputed that Smith never specifically requested FMLA leave. Heartland asserts that Smith did not communicate sufficient information to put Heartland on notice that she qualified for FMLA leave. Smith asserts that she did communicate sufficient information. Smith claims that she "described the situation with [her] father's health to Heartland, i.e. that he was terminally ill" in January 2006. Heartland asserts, however, that this was never communicated to Heartland. Smith's father was also a resident at Heartland from late-January to early-February, 2006, so Smith asserts Heartland should have been aware of the seriousness of his condition.

Smith also asserts that she was approached by the HR Manager, Streitenberger, about the frequency of her absences. Smith alleges she told Streitenberger that her father's illness was the reason for some of the absences, and that Streitenberger told her she could apply for FMLA leave if she was needed to care for her father for three or more consecutive days. Smith alleges, therefore, Streitenberger was aware of the reason for her absences and of her need for FMLA

2003). Heartland's argument that there was no entitlement to benefits is thereby unavailing.

leave. Streitenberger asserts that she did in fact speak with Smith several times about her absences, but that Smith never indicated her absences were to care for her father, or that she required a leave of absence for any reason.

Smith finally asserts that she communicated to Heartland for her January 22-23 absence, her February 9-11 absence, her February 13th absence, and her March 22nd absence that she was taking time off to assist with her father's care. Smith asserts that she communicated to Heartland for her April 29th absence that there was a family illness in connection with her father and that the hospital had called the family in.[5]

Heartland contends this information was never provided to it. Heartland contends, rather, the only information provided to it for the January 22-23 absence was that Smith's father was in the hospital, the only information provided to it for the February 9-11 absence was that Smith called off sick, the only information provided to it for the February 13th absence was that Smith called off sick, the only information provided to it for the March 22nd absence was that there was a family illness, and the only information provided to it for the April 28-29 absence was that the hospital had called the family in. They support this with the Absence Report slips, filled out by the nurse in charge of the shift when the absence was reported, and the attendance log, filled out by Smith's supervisor, Ricci. The nurses who filled out the Absence Reports were instructed "to get as much information as possible to fill out the form so we would understand the reason

---

[5]The assertion in Smith's affidavit that she informed Heartland that she needed to be absent April 28-29 to assist with her father' care (and the assertion that she informed Heartland "that the absence was due to me being needed to assist him") has been stricken from her affidavit because it is in direct contradiction to her deposition.

why the person called off." (Ricci depo. at p. 9). They were also trained by the HR Director

about the FMLA, and specifically about intermittent leave. (Streitenberger aff. ¶ 3).

Heartland also claims that Smith never notified Ricci, who was her supervisor, that her

absences were related to her father, or that she needed leave to assist in her father's care.

According to Heartland's FMLA Policy, "Notice must be provided to the person to whom the

employee normally submits leave requests, such as the immediate supervisor, who has

responsibility to inform the location's human resources designee about the notice." In addition,

according to Heartland's Employee Handbook: Leave of Absence Policy, "When the need for a

leave arises, you must: Notify your supervisor as soon as possible before the start of your

requested time off."[6]

The information on the Absence Reports for the January 23rd absence indicates Smith's

father was in the hospital, for the March 22nd absence indicates that there was a family illness,

and for the April 29th absence indicates that the hospital had called the family in. In *Walton v.

Ford Motor Co.*, 424 F.3d 481 (6th Cir. 2005) the court found an absence call-in log sheet

indicated that the employee's absence was due to him being "sick." *Id.* at 487. The court found

that this information, even if passed along to the employee's supervisor and the labor relations

department, was not sufficient to impart notice to the employer that the employee was requesting

_____

[6]Heartland points out that Smith never mentioned her absences being due to her father during her termination meeting. Smith does not dispute this, though Heartland also did make any inquiry about her absences. This could call into question the credibility of her assertion that she informed Heartland that the reason for her absences was to assist in the care of her father. In *Brenneman*, the plaintiff did not mention his diabetes during his termination meeting, which he asserted was because he was never asked why he had been absent. 366 F.3d at 423 n.8. However, the court stated, "[g]iven that his supervisors were expressly terminating plaintiff based, in part, upon this absence, a reasonable person in plaintiff's position would have referenced the reason necessitating that absence in an attempt to avert the termination." *Id.*

sick leave. *Id.* In *Beaver v. RGIS Inventory Specialists, Inc.*, 144 F.App'x 452 (6th Cir. 2005), the court found that the employee informing the employer when describing her health that she "didn't feel good," was "sick," and "needed a couple of days to get better, a few days," was insufficient to impart notice that she needed FMLA leave. *Id.* at 456; *see also* 29 C.F.R. § 825.303(b) ("the employee must specifically reference either the qualifying reason for leave or the need for FMLA leave. Calling in "sick" without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act").

Smith was terminated for her excessive absences. Heartland asserts Smith had 13 unexcused absences. Smith asserts five of these absences were FMLA-qualifying. "[A] termination based only in part on an absence covered by the FMLA, even in combination with other absences, may still violate the FMLA." *Calvin*, 346 F.3d at 726 (6th Cir. 2003). Heartland's policy was to terminate an employee after ten unexcused absences. If more than three of the absences in question were FMLA-qualifying absences, then the termination would be based in part on an absence covered by the FMLA.

There is a genuine issue of material fact as to the information about which Heartland was informed besides what was recorded on the Absence Reports. The parties dispute whether Heartland was aware of the seriousness of Smith's father's condition and whether Smith informed Heartland when she called in absent that she was taking time off to care for her father. The parties also dispute whether Smith informed Streitenberger about the situation with her father. Because there is a genuine issue of material fact as to the information about which Heartland was informed, there is also a genuine issue of material fact as to whether Heartland had a duty of inquiry to look further into the absences based on the information that was

provided. It is an issue for the finder of fact to decide the information of which Heartland was aware for each absence and whether this was sufficient to give notice of Smith's intention to take FMLA leave. Summary Judgment on the FMLA claim under the interference theory is thereby **DENIED**.

## 2. FMLA Retaliation

In order for Smith to establish that Heartland retaliated against Smith in violation of the FMLA, Smith must be able to show that: (1) she availed herself of a protected right under the statute by notifying Heartland of her intent to take leave; (2) she experienced an adverse employment action; and (3) a causal connection between her exercise of her FMLA rights and the adverse employment action exists. *See Skrjanc v. Great Lakes Power Serv. Co.,* 272 F.3d 309,314 (6th Cir. 2001)*, cited by Gembus v. Metrohealth Sys.*, No. 07-3542, 2008 WL 3977528, at *3 (6th Cir. Aug.27, 2008).

As set forth above, there is a genuine issue of material fact as to what information Heartland was aware of for each absence and whether this was sufficient to give notice of Smith's intention to take FMLA leave. Summary Judgment on the FMLA claim under the retaliation theory is thereby **DENIED**.

**V. CONCLUSION**

For the foregoing reasons, this Court **DENIES in PART** and **GRANTS in PART**

Heartland's Motion to Strike, **DENIES** Heartland's Motion for Summary Judgment, and

**DENIES** Smith's Motion for Summary Judgment.

    **IT IS SO ORDERED.**


                    **_s/Algenon L. Marbley_**
                  **ALGENON L. MARBLEY**
                  **UNITED STATES DISTRICT COURT**

**Dated: March 24, 2009**